[No. 15969.   Department Two.—December 13, 1895.]

AARON BARNES, Sr., APPELLANT, v. JESSIE B. BARNES, RESPONDENT.

ANTENUPTIAL SETTLEMENT—FALSE REPRESENTATIONS AS TO CHARACTER OF WIFE—VALIDITY OF SETTLEMENT.—An antenuptial settlement, made in contemplation of marriage, is based upon a sufficient consideration, and where the marriage has been consummated, and the relation of husband and wife has been maintained for several years, the antenuptial settlement cannot be set aside upon the ground that the wife personally, and by her friends and agents, falsely represented that she was a virtuous, worthy, chaste, and moral woman, whereas she was in fact a woman of unchaste and immoral character.

ID. — VALIDITY OF MARRIAGE — PREVIOUS UNCHASTE CONDUCT — PUBLIC POLICY—MAXIM.—Previous unchaste conduct, although concealed, does not invalidate a marriage; but public policy opens marriage as the gateway for repentance and virtue, and the maxim *caveat emptor* governs in regard to a marriage settlement.

APPEAL from a judgment of the Superior Court of the County of Sonoma.  S. K. DOUGHERTY, Judge.

The facts are stated in the opinion of the court.

*George Pearce*, and *W. F. Russell*, for Appellant.

All marriages procured by fraud or involving palpable error are void.  (Schouler's Domestic Relations, 34, 35; *Scott* v. *Shufeldt*, 5 Paige, 43; Civ. Code, sec. 82.)  As to matters peculiarly within the knowledge of the parties, *caveat emptor* applies, and the parties are put upon reasonable inquiry.  (Schouler's Domestic Relations, 36, 37.)  This doctrine does not apply where a woman was pregnant by another man.  (*Reynolds* v. *Reynolds*, 3 Allen, 605; *Foss* v. *Foss*, 12 Allen, 26; *Crehore* v. *Crehore*, 97 Mass. 330; 93 Am. Dec. 98; *Baker* v. *Baker*, 13 Cal. 87; *Montgomery* v. *Montgomery*, 3 Barb. Ch. 132.)  The agreement of defendant to serve plaintiff during their joint lives was part of an entire contract, and failing to perform in whole or part she cannot retain the consideration paid.  (*Hutchinson* v. *Wetmore*, 2 Cal. 311, 312; 56 Am. Dec. 337; *Haskell* v. *McHenry*, 4 Cal. 411; *Jones* v. *Post*, 6 Cal. 104.)  Nor was the marriage of the defendant with plaintiff even a part performance of her part of the contract, as to the property sued for.  (*Peek* v. *Peek*, 77 Cal. 106; 11 Am. St. Rep. 244.)

*A. B. Ware*, for Respondent.

The consideration of marriage is the highest known to the law, and defendant is entitled to hold the property precisely as if she had paid in money the full value of the property.  (*Otis* v. *Spencer*, 102 Ill. 622; 40 Am. Rep. 617–22, note; *Prewit* v. *Wilson*, 103 U. S. 22; *Pierce* v. *Harrington*, 58 Vt. 649; Schouler's Domestic Relations, 2d ed., 263; *Verplank* v. *Sterry*, 7 Am. Dec. 362, note; *Conner* v. *Stanley*, 65 Cal. 186; *Smith* v. *Allen*, 5

Allen, 454; 81 Am. Dec. 758.) By the marriage all acts
of misconduct previous thereto are forgiven. Matri-
monial offenses are those committed after, and not be-
fore, marriage. (Schouler's Domestic Relations, 2d ed.,
36, 37; *Varney* v. *Varney*, 52 Wis. 120; 38 Am. Rep.
726–32; *Merritt* v. *Scott*, 50 Am. Dec. 371, note; Bishop
on Marriage and Divorce, 3d ed., secs. 100, 101, 103, note
2; sec. 105, note 1; sec. 118.) The promise to live with
plaintiff during their joint lives had entirely exhausted
itself when it entered into the marriage contract, and
was not the consideration for the transfer of the prop-
erty. (*Ellison* v. *Jackson Water Co.*, 12 Cal. 553.) The
validity of a marriage contract does not rest upon any
stipulations concerning accidental qualities. (*Varney*
v. *Varney, supra;* Schouler's Domestic Relations, 2d ed.,
36.) A man takes a wife for better or for worse, whether
she has the qualities or not. (*Varney* v. *Varney, supra;*
Walker's American Law, 247, citing *Wier* v. *Still*, 31
Iowa, 107; *Long* v. *Long*, 77 N. C. 304; 24 Am. Rep.
449.) *Caveat emptor* is the necessary maxim of the law.
(Schouler's Domestic Relations, 2d ed., 36.)

McFARLAND, J.—A demurrer to the amended com-
plaint was sustained; and plaintiff declining to further
amend, judgment was rendered for defendant. Plaintiff
appeals from the judgment.

The demurrer was properly sustained, and the judg-
ment must be affirmed, because the complaint does not
state facts sufficient to constitute a cause of action.

There are two counts in the complaint. In the first
it is averred that on July 18, 1885, plaintiff conveyed
and transferred to defendant certain real and personal
property in consideration that defendant "should and
would marry plaintiff and live with him during the
remainder of their joint lives"; that in pursuance of
said promise defendant did the next day, July 19th,
intermarry with plaintiff, and thenceforward lived with
plaintiff as his wife continuously until some time in
August, 1892, when she left plaintiff without his con-

sent and, as he alleges, without just cause, and has since refused to live with him.

In the second count, after a restatement of the facts stated in the first count, it is also averred that at and immediately preceding the time of said marriage plaintiff was desirous of marrying "some virtuous, worthy, chaste, and moral woman who would live with him during his life"; that the defendant personally, and by her friends and agents, represented and stated to him that she was such a woman; that relying upon and believing such representations and statements, and in consideration thereof, he made the said conveyance and transfer of said property; that said representations were false, and defendant was "a woman of unchaste, unworthy, and immoral character"; and that he did not discover that said representations were false until within three years next before the commencement of this action.

The prayer is for a reconveyance of the property and twenty thousand dollars damages.

The consideration for the transfer was the promise of the respondent to marry the plaintiff, which promise she kept. The averment that she promised to live with him during their joint lives is of no consequence; it was included in the marriage contract itself, and its separate averment has no significance. Nor is there any legal value to the averments that respondent represented at the time of the marriage that she was a worthy and chaste woman, and that said representation was not true. Previous unchaste conduct, although concealed, does not invalidate a marriage. "Public policy pronounces otherwise and opens marriage as the gateway to repentance and virtue." *Caveat emptor* governs. (Schouler's Domestic Relations, sec. 23, and cases cited.) An executed contract of marriage, accompanied by full consummation, differs in many respects from ordinary contracts. It creates a *status* which society is interested in maintaining. "In that contract of marriage which forms the gateway to the *status* of marriage the parties take each other for better, for worse, for richer, for

poorer, to cherish each other in sickness and in health; consequently a mistake, whether resulting from accident, or in general from fraudulent practices, in respect to character, fortune, health, or the like, does not render void what is done. . . . . A man who means to act upon such representations should verify them by his own inquiries. The law presumes that he uses due caution in a matter in which his happiness for life is so materially involved, and it makes no provision for the relief of a blind credulity, however it may have been produced." (1 Bishop on Marriage and Divorce, 6th ed., sec. 167, and cases there cited.) It is true that when the woman is, at the time of the marriage, pregnant with child by another man, and the pregnancy is unknown to the husband, the marriage may be avoided; but that is because she is, at the time, incapable of bearing a child to her husband, and therefore unable to perform an important part of the marriage contract. (*Reynolds* v. *Reynolds*, 3 Allen, 605; *Baker* v. *Baker*, 13 Cal. 87.) But even that rule has been held not to obtain where the husband knew of the pregnancy, but had the mistaken belief that the woman had not been unchaste with any man other than himself. (*Foss* v. *Foss*, 12 Allen, 26.) Therefore, in the case at bar the marriage was neither void nor voidable, even if all the averments of the complaint are true; and as the marriage, which was the very highest kind of a consideration, was the consideration for the conveyance of the property, there is no ground for setting aside the conveyance, or for any other relief asked. The case put in the argument of a woman merely going through the marriage ceremony and then refusing to act further as a wife has no pertinency to the case at bar. In such a case it might be held, perhaps, that the contract to marry was not actually performed; but here the marriage was fully consummated, and the relation of husband and wife maintained for years.

The judgment is affirmed.

HENSHAW, J., and TEMPLE, J., concurred.