FANNIE HELLER, petitioner-respondent,

*v.*

MAX HELLER, defendant-appellant.

[Submitted May Term, 1934.   Decided September 27th, 1934.]

*Mr. Irving L. Werksman,* for the petitioner-respondent.

*Mr. Sholem Lipis,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

The petitioner, Fannie Heller, sued for the annulment of her marriage upon the ground that her husband, the defendant, Max Heller, was, at the time of marriage physically and incurably impotent   The advisory master by whom the mat-

ter was heard found for the petitioner, and a decree *nisi* was granted accordingly. Defendant appeals.

The marriage was on August 28th, 1932. The parties separated November 2d, 1932. Cohabitation was, therefore, limited to sixty-six days, and the opportunity for coition was still further reduced by three menstrual periods of the petitioner occurring during that time. The proceeding for annulment was begun November 10th, 1932. The defense was that the defendant is fully competent to consummate the marriage and that the failure of consummation was due to nervous resistance and assertions of pain by the petitioner.

The defendant is not without virile qualities. It is conceded that he regularly made sexual response to his wife's body by an erection and an effort at intercourse but that discharge took place before penetration was accomplished. The reason for the premature emission is ascribed by the wife to the husband's inability, and by the husband to the exercise of restraint occasioned by the wife's protestations. One of the medical witnesses produced by the petitioner testified that the probability of a cure attends such a condition as the petitioner imputes to the defendant. He also testified that the petitioner's vaginal opening was extremely resistant. There is further uncontradicted medical testimony that the defendant is capable of emitting semen containing live mobile spermatozoa.

The facts of marriage and of absence of coition are established. But the rule is that neither a divorce nor an annulment may be granted upon the uncorroborated testimony or admission of a party to the suit on any element in the proofs necessary to sustain the decree. *Hague* v. *Hague, 85 N. J. Eq. 537; Bolmer* v. *Edsall, 90 N. J. Eq. 299*. We think, therefore, that the petitioner falls short in her essential proofs, for her recital of the reason for failure of coition stands alone, uncorroborated; and there is no other proof of impotence unless, indeed, it be the very fact of non-consummation, of which we shall presently speak. However, even if we assume that failure of coition was due to the husband's inability, during the period of cohabitation, to consummate,

our opinion is that the petitioner's proofs are nevertheless deficient.

The Divorce act (*2 Comp Stat. p. 2021*), upon which the suit is based, provides in section 1 (amended *P. L. 1931 ch. 311*) that "decrees of nullity of marriage may be rendered in all cases when  *  *  *  the parties, or either of them, was at the time of marriage physically and incurably impotent; provided, the party making the application was ignorant of such impotency or incapability at the time of the marriage, or has not subsequently ratified the marriage." The question of knowledge and of ratification are not raised. Conspicuous in the statute is the word "incurably," and not only therein but, in one phase or another, in the jurisprudence relating to the subject.

Impotence is defined as want of power for copulation (*Kirschbaum* v. *Kirschbaum, 92 N. J. Eq. 7, 13*), and may be curable, incurable, accidental or temporary. *31 C. J. 259; Bouv. Dict.* If all of the proofs submitted by the petitioner, including the uncorroborated portions of her own story, were to be accepted as true, they would sustain the proposition that the defendant was, as to her and during the period of cohabitation, impotent, but not that the impotency is incurable. There is no proof of incurability, and there are no proofs from which incurability may be presumed. It is quite consistent with the proofs that the defect should be either temporary or curable. In *Tompkins* v. *Tompkins, 92 N. J. Eq. 113,* Vice-Chancellor Backes, citing many decisions by the English courts, applied what is called the doctrine of triennial cohabitation, the essence of which is that "if the wife be a virgin and apt after three years' cohabitation, the husband will be presumed to be impotent, and the burden will be upon him to overcome the presumption by proof that he is not at fault." We understand that the rule there stated was intended to be comprehensive of impotency in its full statutory sense as a ground for annulment, namely, incurable impotency, which is the only type of the disability within the statute.

Chancellor Walker in the chancery case of *Bissell* v. *Bissell,*

*93 N. J. Eq. 537,* considered that the studied refusal of the defendant to submit to a physical examination under court order was corroboration of the petitioner's testimony on impotency and sufficed to make a case; no such order appears in our record, although the defendant appeared in person before the court  In *Steerman* v. *Snow, 94 N. J. Eq. 9,* the same jurist delivered an opinion in the court of chancery having to do chiefly with the jurisdiction of that court to annul either for impotence under the statute or for false representations as to virility under the court's general jurisdiction; the question of curability was not presented.  In *Grobart* v. *Grobart, 107 N. J. Eq. 446; affirmed, 109 N. J. Eq. 129,* the petitioning wife sought separate maintenance because of her husband's cruelty in compelling her to submit to unnatural practices which aroused but did not gratify her passions, and Vice-Chancellor Lewis grounded a presumption of impotence in several incidents of which one was a marriage experience of ten months.  The cases named in this paragraph are cited by respondent in support of her case, and we have mentioned them with a brief descriptive word to indicate distinct differences that in our opinion take them from the category of precedents on the point under discussion.

Incurable impotence is not a chance expression.  It has long been recognized by the courts and the text writers as a definite and precise degree of the general physical defect to which it refers.  It is the ground set up by the statute.  We may not dismiss the word "incurably" from our view, nor may we acquiesce in the respondent's argument that the burden of disproving disability was on defendant.  Petitioner made the charge.  The burden was upon her to prove it.  In *A. B.* v. *C. B., 34 N. J. Eq. 43,* the incurability was determined by a fruitless operation to remove the cause; in *Fehr* v. *Fehr, 92 N. J. Eq. 316,* by a condition resulting from a congenital disability for which surgical treatment had been given.  The requirement for such proof has been stressed even where the statute of the jurisdiction did not so specify. *Devanbagh* v. *Devanbagh, 5 Paige Ch. 554; 6 Ibid. 175.* The permanency of the impairment as a cause for divorce or

annulment is emphasized in the following decisions, some of them based upon statutory provisions: *Bunger* v. *Bunger, 85 Kan. 564; 117 Pac. Rep. 1017; Kempf* v. *Kempf, 34 Mo. 211; Anonymous, 35 Ala. 226; Payne* v. *Payne, 46 Minn. 467; Bascomb* v. *Bascomb, 25 N. H. 267; Anonymous, 89 Ala. 291,* and by the following text book writers: *Dixon Div. Law and Practice (4th ed.) 34; 2 Schouler Mar., Div., Sep. and Dom. Rel. (6th ed.) § 1111; Eversley Law of Com. Rel. (4th ed.) 23.*

In lieu or in amplification of proof, incurability may be presumed from the establishment of appropriate facts. On a showing of continued cohabitation, the wife meanwhile being apt and remaining a virgin, the husband will be presumed to be impotent to the degree required by the statute and the burden will be upon him to overcome the presumption by proof that he is not at fault. We have never fixed a definite period at the end of which the presumption would operate and do not feel warranted by the facts, the issue or the arguments in the instant case in doing so now. We are clearly of the opinion, however, that, having regard for the vicissitudes of life, a period of two months is wholly inadequate to cause the presumption to arise.

We conclude, therefore, that the petitioner did not prove her case. It follows that the decree must be reversed. The record will be remitted to the court of chancery for such disposition as is consistent with our views.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.