## Wilson, Appellant, v. Wilson.

Argued November 13, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

424

Benjamin Sork, of Blumberg & Sork, for appellant.

G. Harry Ditter, for appellee.

OPINION BY PARKER, J., April 15, 1937:

The libellant alleged in his libel as ground for a divorce that the respondent "was at the time of her marriage, and still is, impotent or incapable of procreation, said condition being permanent and incurable." To this the wife replied: "Respondent neither admits nor denies the averments in paragraph four and asks due proof thereof at the trial of the cause." The proofs showed sterility by reason of an operation but not impotence. The master to whom the case was referred recommended an absolute divorce but the court of common pleas refused a decree and dismissed the libel. The libellant has appealed to this court.

Although, as we are required to do on all appeals from decrees for a divorce, except in cases where there is an issue and jury trial, we have reviewed the testimony to determine whether it would sustain a decree for libellant, we have concluded that the controlling question is one of pure law.

The parties were married on May 21, 1932, the husband being then twenty years of age and the wife thirty-four, and they separated in the latter part of March,

1935. On August 31, 1922, the respondent had submitted to a surgical operation and her ovaries, Fallopian tubes, and uterus were removed. There was expert testimony showing that after the operation she was for all time thereafter incapable of bearing a child and that such condition was incapable of cure or correction. In fact, the respondent at the hearing admitted her physical condition and particularly her inability to bear children. From a period of one year before marriage and until the separation the parties had frequent and normal sexual intercourse. These facts may be taken as admitted.

At the hearing a considerable portion of the testimony of both parties bore upon the claim of the respondent that she had advised her husband about a year prior to the marriage that she had had an operation and would never be able to bear children. The husband denied that she so advised him or that he had any knowledge of this condition when the contract was entered into and asserted on the contrary the respondent informed him prior to and at the time of marriage that she was then pregnant by him. The master found that the husband did not know when they were married that she was incapable of bearing children. In view of the conclusion at which we have arrived, no purpose would be served by an analysis of the evidence bearing on this feature of the case. Suffice it to say that a careful reading of the record leads us to the same conclusion as that reached by the master. We will therefore assume that the libellant did not know of the sterility of his spouse until about six months after the marriage.

The "Divorce Law" of this Commonwealth (Act May 2, 1929, P. L. 1237, §10; 23 PS 10) provides that "it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged ...... that the other spouse at the time of the contract, was and still is naturally and

incurably impotent, or incapable of procreation." This was substantially a re-enactment of the provisions of the Act of March 13, 1815, 6 Sm. Laws 286, which in turn replaced the Act of Sept. 19, 1785, 2 Sm. Laws 343. In these two acts the ground was stated in this language. "That either party, at the time of the contract, was and still is naturally impotent or incapable of procreation." It is of no importance that the present act has added a comma after the word "impotent." "There is no punctuation in a statute, which ought to rule": *Gyger's Est.*, 65 Pa. 311, 312.

The parties have, by their proofs, presented to us a legal question not heretofore passed upon by the appellate courts of this state and to which they are entitled to an answer. Under the present Divorce Law of this Commonwealth, is incapacity to procreate an independent ground for divorce where it appears that the party complained against is capable of natural and complete copulation, possesses adequate power of *vera copula?*

We agree with the conclusion of the learned judge of the court below that the prime question involved must be answered in the negative and that libellant is not entitled to a divorce, but we are moved to so decide by other reasons than the one relied upon in the opinion filed below. It was there held that the word "naturally" modified both "impotent" and "incapable of procreation"; that the word "natural" was used in a sense opposed to a condition artificially created; and that the sterility being due to an operation the statute did not apply. This seems to us a narrow construction and one that would lead to unsatisfactory results. One result of such construction would be to deny a divorce to an injured spouse in cases where the impotence was incurable and existed at the time of the contract if it was not an inborn defect and even though it might have been due to the vicious habits of the respondent.

We are of the opinion that our statute does not create two separate grounds, impotence used in the sense of absence of full power of natural copulation and sterility when there is *potentia copulandi.* The second phrase in the act is an explanation of, or in elucidation of, the term "impotent," or, to borrow the words from the opinion of the court below, "the latter part of the phrase is explanatory or epexegetical of the first words." We arrive at such conclusion. for a number of reasons.

An examination of the English and American cases dealing with this subject and involving the construction of statutes that vary in the precise wording discloses a remarkable unity. All authorities agree that the terms "impotence" and "incapacity to procreate" as used in the divorce statutes and decisions interpreting such statutes are not synonymous. The two expressions deal with different powers: 9 R. C. L., p. 280; 19 C. J. 40, 41; 4 Words & Phrases, 1st ser., p. 3443. In the common and ecclesiastical law, and in the statutory law, the distinction is recognized. There is, however, physiologically an intimate relation between the two. Copulation is in nature necessarily always a part of procreation. It is therefore but natural that the words should be associated by the legislature in expressing its intention. The term "impotency" may be applied to other than sexual powers and it is not strange that when the term was used in the Divorce Law procreation should have been mentioned to identify impotency, and that too without intending to broaden the term "impotency." A subject is being dealt with that is not ordinarily analyzed with particularity when it is considered or discussed.

An examination of a host of decided cases in other jurisdictions has failed to disclose a single case where a court has granted a divorce upon the bare ground of sterility. It is significant that the law has been the

same in this Commonwealth for more than a century, yet we do not find in the reports a single case where a divorce has been granted for mere sterility. In the case of *Turney v. Avery*, 92 N. J. Eq. 473, 113 A. 710, application was made for a divorce on the grounds of impotence and of fraud. It appeared that the woman was traumatically barren when the contract was entered into, and that this fact was not disclosed to or known by the husband until after marriage, but it was admitted that she was capable of having normal sexual intercourse. The court held that the charge of impotence was not sustained but granted an annulment on the ground of fraudulent concealment. Also, see the case of *Aufort v. Aufort*, (California) 49 Pac. (2d) 620. Here the ground alleged in the libel is not fraud.

At common law, impotency as distinguished from sterility or lack of procreative power was alone a ground of annulment or divorce. Inability to procreate was not the test: *Deane v. Aveling*, 1 Robertson's Ecc. Rep. 279, 298, English Rep. (reprint) Vol. 163, p. 1039. Bishop, in Marriage, Divorce & Separation (Vol. 1, p. 329) says: "In common law countries the marriage will be good if there is an adequate power of mere copula, though impregnation should be impossible." The same is true of the law as declared by the American cases.

In *Williams v. Williams*, 1 Tex. Civil App. (Higgins) 538, the statute provided for a divorce where it was shown "that either party at the time of the contract was and still is naturally impotent *and* incapable of procreation." The court relied on the common law distinction between impotency and sterility and held that sterility alone was not sufficient.

While we have not been able to find a case in which the same language is used as is found in our statute, we do find a consistent and universal thought expressed in all the decisions, however the wording may be. It

is that a divorce will not be granted for mere sterility where there is not impotence.[1] Impotence as a cause of divorce means incapacity for sexual intercourse and does not imply incapacity to beget children.

It has been repeatedly said that "a statute should be so interpreted that it will accord, as nearly as may be, with the theretofore existing course of the common law": *March v. Phila. & West Chester Trac. Co.*, 285 Pa. 413, 415, 132 A. 355. A departure from the common law ought not to be held to be intended here unless the language is clear and explicit. The legislature is presumed to have spoken with a knowledge of the case law and we do not believe it intended to enlarge the content of the term "impotence."

There is also an element present here that requires special consideration and that is public policy. Divorce has to do with marriage, a prime concern of the state. All divorce actions are to be considered not only as they affect the immediate parties but also all the people and organized society. We should not lightly consider the effect of our decision. If sterility alone and in the absence of fraud is to be held to be a ground for divorce, we think the results would be shocking. Consider the cases that would arise where the parties have passed the prime of life. It is a poor answer that the law presumes that male or female may procreate at any age. Again, as is recognized by science, the precise impediments to procreation are frequently difficult to determine. We can all observe the large number of

---

[1] *Heller v. Heller*, (N. J.) 174 A. 573; *Tompkins v. Tompkins*, 92 N. J. Eq. 113, 111 A. 599; *Carmichael v. Carmichael*, 106 Ore. 198, 211 P. 916, 918; *Smith v. Smith*, 206 Mo. App. 646, 229 S. W. 398; *Griffith v. Griffith*, 162 Ill. 368, 44 N. E. 820; *Bunger v. Bunger*, 85 Kan. 564, 117 P. 1017, Ann. Cases 1913A, 126; *Jorden v. Jorden*, 93 Ill. App. 633; *Payne v. Payne*, 46 Minn. 467, 49 N. W. 230; Anonymous, 89 Ala. 291, 7 So. 100, 7 L. R. A. 425; *Devanbagh v. Devanbagh*, 5 Paige (N. Y.) 554; Bishop on Marriage, Divorce & Separation, §768.

marriages which are barren even among those who really desire to have children. Certainly such persons should not be denied the privileges of the marriage relationship.

In the construction of statutes it has frequently been necessary to hold the word "or" to mean "and." In *Rolland v. Com.*, 82 Pa. 306, 326, "or" was held to mean "and" in the phrase "break or enter" used to define burglary. In *Phila. Nat. Bk. v. Buchman*, 314 Pa. 343, 171 A. 589, the court in construing the phrase "with costs of collection or an attorney's fee" in the Negotiable Instruments Act, held that "or" meant "and." Also, see *Murray v. Keyes*, 35 Pa. 384, 391; *Foster v. Com.*, 8 W. & S. 77; *McGinnis's Est.*, 109 Pa. Superior Ct. 248, 167 A. 616; Endlich on the Interpretation of Statutes, §303.

Taking into account the whole course of the common law, the uniformity in the construction of statutes dealing with the subject regardless of the precise wording, and public policy, we are of the opinion that the legislature did not intend to add a new cause of divorce, to wit, mere sterility. The phrase "or incapable of procreation" is but explanatory of "impotence," "or" being used in the conjunctive or explanatory sense of "and." The whole phrase is then taken to mean as though it read, "naturally and incurably impotent and therefore incapable of procreation."

We do not decide whether fraudulent concealment of a known and permanent sterility is a ground for divorce or annulment in this Commonwealth as such cause was not alleged in the libel. In that connection we call attention, however, to the admitted fact that for approximately two and one-half years after the libellant knew his wife's true physical condition he continued to cohabit with her and have sexual intercourse with her. See *Kirschbaum v. Kirschbaum*, 92 N. J. Eq. 7, 111 A. 697.

We are all of the opinion that the divorce was properly refused.

Decree affirmed at costs of appellant.